# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1767V
UNPUBLISHED

| | |
|---|---|
| MAYRA CALLEJAS,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: May 5, 2023<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, *for Petitioner.*

*Naseem Kourosh*, U.S. Department of Justice, Washington, DC, *for Respondent.*

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On December 4, 2020, Mayra Callejas filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on December 12, 2019. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

Petitioner has filed a Motion for a Ruling on the Record coupled with a Brief in Support of Damages. For the reasons described below, I find that Petitioner is entitled to

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

compensation, and I award damages in the amount **$67,500.00**, **representing Petitioner's actual pain and suffering.**

## I.     Relevant Procedural History

As noted above, the case was initiated in December 2020. More than a year later, on February 16, 2022, Respondent filed a status report stating that he was willing to entertain settlement discussions. ECF No. 28. Thereafter, the parties attempted to informally resolve the issue of damages but reached an impasse on an appropriate award. ECF Nos. 35, 36.

Accordingly, on May 13, 2022, Respondent filed a Rule 4(c) Report disputing Petitioner's entitlement to a Vaccine Program award. ECF No. 38. Specifically, Respondent argued that Petitioner had failed to show that she suffered a Table injury because her pain was not limited to her vaccinated shoulder. Rule 4(c) Report at 7.

On June 3, 2022, Petitioner filed a Motion for Ruling on Record and Brief in support of Damages ("Motion"), arguing that she had established entitlement to compensation for her SIRVA injury, and also requesting $95,000.00 for past and future pain and suffering. ECF No. 39. Petitioner explicitly maintained that her pain and reduced range of motion were limited to her vaccinated shoulder. *Id.* at 16.

Respondent filed his brief in reaction to Petitioner's Motion on August 5, 2022 ("Response") recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 43. Respondent maintained that Petitioner's pain and reduced range of motion were not limited to her vaccinated shoulder. *Id.* at 5-8. Respondent also argues for only $57,500.00 in actual pain and suffering (assuming entitlement is found). Response at 11 -18. Petitioner filed her Reply on August 16, 2022. ECF No. 44.

In March 2023, I informed the parties that this matter appeared to be appropriate for an expedited hearing and ruling. Scheduling Order entered March 14, 2023; ECF No. 47. Thereafter, at the April 2023 Motions Day, I heard oral argument and issued an oral ruling on Petitioner's entitlement to compensation and an appropriate award of pain and suffering, which is memorialized below.[3]

---

[3] *See* Hearing Order filed March 28, 203 (Non-PDF); Minute Entry entered May 5, 2023 (Non-PDF). A court reporter made an official recording of the proceeding. A link to instructions on the Court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entry.

## II.  Relevant Factual Evidence

I have fully reviewed the evidence, including the medical record and affidavit, written briefs, and Petitioner's argument at the April 21st Motions Day hearing.[4] Based upon the above, I note and find the following:

- Petitioner received a flu vaccine on December 12, 2019 at Spring Branch Community Center ("Spring Branch") in Katy, Texas. Ex. 1 at 12. It was administered in her left shoulder. *Id.*

- In her affidavit, signed on November 17, 2020, Petitioner avers that she "immediately felt an abnormal and painful sensation at the injection site. That night and the following day, the pain did not subside with the self-dosing usage of Ibuprofen as recommended by the nurse who administered the shot." Ex. 2 at 3.

- Petitioner further avers that "[d]ue to the ongoing pain that persisted," she called Spring Branch to schedule a follow-up appointment. Ex. 2 at 3. However, Petitioner states that "I was not provided assistance as the office ushered me towards paying for a medical program to get a consultation." *Id.*

- On January 3, 2020 (22 days post-vaccination), Petitioner presented to Dr. Trenton Carlyle, an orthopedist at the University of Texas Physicians for "evaluation of left shoulder pain." Ex. 3 at 12-14. The medical note documenting this visit indicates that Petitioner's pain began on the date of vaccination. *Id.* at 12. Petitioner rated her pain as a ten on a ten-point scale and noted that she experienced "clicking, catching, numbness, night pain, pain with sports/activities, stiffness and daytime pain with rest." *Id.* An x-ray was unremarkable, and a physical examination showed full range of motion, normal motor strength, deltoid tenderness, and a painful arc in the rotator cuff. *Id.* at 14. Petitioner was assessed with left shoulder pain and over-the-counter pain relivers were recommended. *Id.*

- On January 10, 2020, Petitioner presented to Dr. P. Timothy Sprockel at Houston Methodist Orthopedics and Sports Medicine concerning her left shoulder. Ex. 9 at 59-62.  In addition to reporting decreased range of motion, Petitioner also indicated that she "felt pain radiating to her fingers as she was getting the shot" and that her pain "radiates distally to the mid humerus." *Id.* at 59. On exam, Petitioner exhibited limited range of motion as well as mildly reduced strength on resisted external rotation and resisted abduction and reduced deep tendon reflexes in her upper extremity. *Id* at 61. Petitioner was assessed with acute left shoulder pain, left axillary nerve injury, and left shoulder bursitis. *Id.* at 62. She was prescribed meloxicam and was referred to physical therapy. *Id.* at 62-63.

---

[4] I note that Respondent declined to provide argument at the Motions Day hearing. Although in this case I was able to reach determinations based on the filings plus claimant's assertions, any party who wishes to rest on a brief (and in effect, decline a Motion's Day resolution) should make that clear; otherwise, a party who simply appears but says nothing can expect for their contentions to receive considerably less weight.

- Petitioner underwent an initial physical therapy evaluation on January 15, 2020. Ex. 4 at 69-70. The physical examination showed that her range of motion was 3/5 in all aspects of the shoulder other than external rotation, which was -2/5. *Id.* at 69.

- Petitioner called Spring Branch on January 31, 2020, "in regards [sic] to last TE [telephone encounter] from 12/13/19." Ex. 1 at 8. The record documenting this call indicates that Petitioner reported arm pain with activities of daily living. *Id.*

- On February 11, 2020, Petitioner again presented to Dr. Sprockel concerning her left shoulder pain. Ex. 9 at 49-52. The medical record indicates that although Petitioner noticed improvement, she "continued to experience pain along the left shoulder region and she is noticing some radiation of the pain distally towards the mid humerus and a tingling sensation into the left arm." *Id.* at 49. Petitioner further reported noticing "pain radiating towards the lateral aspect of the shoulder/deltoid region" when receiving a massage. *Id.*

- A February 13, 2020 physical therapy note documents Petitioner's report of a single occurrence of locking in her left fourth and fifth fingers. Ex. 8 at 50. *Id.* The focus of this session was Petitioner's left shoulder. *Id.*

- Petitioner underwent an MRI on February 14, 2020. Ex. 4 at 30. It revealed (a) mild supraspinatus and infraspinatus tendinosis with mild bursal surface and minimal articular surface fraying; (b) mild subacromial subdeltoid bursitis; and (c) AC joint arthrosis with distal clavicular marrow edema "which may reflect distal clavicle osteolysis." *Id.*

- Petitioner presented to physical therapy on February 18, 2020. Ex. 4 at 21. Petitioner reported that her pain was "much better until after trying to hang shelves." *Id.*

- Petitioner attended physical therapy on February 25, 2020. Ex. 4 at 19. Although she reported "some 'popping'" in her left shoulder, Petitioner also stated that her pain was not as severe as it once was. *Id.* The physical therapist noted Petitioner's report of "numbness in her left hand in the last two fingers after folding a lot of laundry." *Id.*

- In addition to participating in physical therapy, Petitioner also presented for a follow-up examination with Dr. Sprockel on February 25, 2020. Ex. 9 at 42-44. Petitioner reported that she continued to improve with physical therapy and was taking anti-inflammatory medication only as needed. *Id.* at 42. Petitioner was assessed with acute left shoulder pain, left rotator cuff tendinitis and bursitis of the left shoulder. *Id.* at 43.

- At her March 5, 2020 physical therapy session, Petitioner stated that the "pain in [her] left shoulder was increased last week but decreased with medication." Ex. 4 at 11. It was further noted that, despite suffering from weakness on her left side,

4

- Petitioner was able to lift light objects. *Id.* However, because Petitioner did not yet have "full use" of her arm, "continued rehab to improve the strength and motor control of her left [u]pper extremity" was recommended. *Id.* at 13.

- In her affidavit, Petitioner states that "the COVID-19 pandemic resulted in my inability to attend any further physical therapy appointments. I could not safely bring my children into the medical building due to health concerns." Ex. 2 at 5.

- At Petitioner's June 15, 2020 appointment with Dr. Sprockel, she reported "continued improvement" and a resumption of regular activities while also noting an "occasional 'popping sensation.'" Ex. 9 at 26. Petitioner also reported that she had been experiencing right wrist pain for "about 1 month." *Id.* Dr. Sprockel noted that "[d]ue to left shoulder discomfort [Petitioner] feels that she was more active with her right hand." *Id.*

- On August 6, 2020, Petitioner canceled a video visit with Dr. Sprockel. Ex. 9 at 13. However, she exchanged messages with him from August 5 through August 10, 2020 concerning treatment for her right wrist. Ex. 9 at 11-13; 20-21.

- Petitioner presented to Family Medicine Specialists on September 18, 2020 for a chest x-ray related to her history of childhood tuberculosis. Ex. 7 at 7-9. There is no indication that her left shoulder or right wrist were discussed.

- On November 19, 2021 (almost two years post-vaccination), Petitioner resumed physical therapy for left shoulder pain. Ex. 10 at 58-63. During the initial evaluation, Petitioner reported "having left shoulder pain a couple of years ago, for which she had therapy, which made it better, but never really went away." *Id.* at 61. The notes documenting the evaluation indicate that "[a] few months ago [Petitioner] received a shot which made her arm feel numb and tingly into her little finger and ring finger, which went away. The pain is in her shoulder joint." *Id.*

- During Petitioner's December 2, 2021 physical therapy session, she reported that her "shoulder pops and [that she] feels some pain/soreness when she uses her arm." Ex. 10 at 46.

- Petitioner again presented to physical therapy on December 10, 2021. Ex. 10 at 35-36. Although she reported that her shoulder was better, Petitioner also noted that it "still gets sore and tired." *Id.* at 35.

- At a December 23, 2021 physical therapy appointment, Petitioner reported "only having pain in her L[eft] shoulder." Ex. 10 at 24. She further noted that "it hurt[ ] to carry things and to lift her arm out to the side." *Id.*

- Petitioner again presented to physical therapy on December 28, 2021. Ex. 10 at 12-14. The note documenting this session indicates that Petitioner rated her pain as a three on a ten-point pain scale. *Id.* at 12. The note further indicates that Petitioner was "not using her arm to do lifting children and cooking. Doping [sic]

5

  laundry also cause pain. Pain is worst with cold weather." *Id*. Petitioner had "Quite a bit of Difficulty" using tools, appliances, opening doors, and throwing a ball. *Id*. at 13-14. Petitioner was noted to have moderate difficulty laundering clothes, opening a jar, and carrying a small suitcase with her affected arm. *Id*.

- Petitioner presented to her primary care provider on February 8, 2021 concerning a possible hemorrhoid. Ex. 7 at 5-6. There is no indication that her right wrist or left shoulder were discussed.

- On May 21, 2021, Petitioner presented to Dr. Sprockel "with complaints of pain along the lateral aspect of the shoulder and superior aspect of the shoulder with radiation distally into the left hand." Ex. 11 at 32. Petitioner described her symptoms "'as if a string was going through my arm down to my fingers'" and noted that she had experienced this sensation "for several months, worse over the last [two] weeks." *Id*.

- Petitioner again presented to Dr. Sprockel on June 14, 2022. Ex. 11 at 7-11. Although Petitioner reported an exacerbation of shoulder symptoms in the previous ten days, she also noted some improvement. *Id*. at 7. Petitioner denied hand numbness or tingling. *Id*. Petitioner was administered a steroid injection. *Id*. at 19.

- In her affidavit, Petitioner avers that her shoulder injury "goes beyond the current pain and the inconvenience it has caused me . . . [t]his has been life altering in how I live day to day and will almost certainly affect me in the years to come." Ex. 2 at 7. Petitioner explains that she has "not been able to get a good night's rest since the beginning of December 2019," that she continues to "experience difficulties involved with raising my children, especially my youngest who is only a toddler," and that her injury has had a detrimental impact on her ability to perform household tasks. *Id*. at 6 -7.

### III.    Authority

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to

6

be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged

---

[5] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### IV. Findings of Fact Regarding Scope of Pain and Limited Range of Motion

Respondent argues that Petitioner has failed to establish that she suffered a Table injury because her symptoms were not limited to her left shoulder. Response at 5. In support of this position, Respondent asserts that Petitioner "experienced pain and paresthesias down the length of her arm and into her hands and fingers – both during vaccination and afterwards." *Id*.

I find, however, that (for purposes of the Table SIRVA claim), a preponderance of the evidence supports the conclusion that Petitioner's injury was limited to her left shoulder, even if symptoms elsewhere in the arm are documented in the records. It is true that Petitioner reported that her pain *radiated* down her left arm to her hand, fingers, and "distally to the mid humerus" on January 10 and February 11, 2020 as well as on May 21, 2021. However, the medical records documenting these reports also clearly reveal that the pain originated in Petitioner's left shoulder, and that this locus was her primary concern. *See, e.g.*, Ex. 9 at 59 (January 10, 2020 medical note charting Petitioner's chief complaint as "Pain and decreased Range of Motion *of the Left Shoulder*") (emphasis added); *Id*. at 49 (February 11, 2020 medical note categorizing the appointment as a follow-up a visit regarding Petitioner's left shoulder pain); Ex. 11 at 32 (same). And Petitioner's post-vaccination treatment clearly focused on her shoulder symptoms. *See, e.g.*, Ex. 9 at 63 (January 10, 2020 referral to physical therapy after Petitioner was diagnosed with acute pain of the left shoulder, injury to the left axillary nerve and left shoulder bursitis); Ex. 10 at 58 (November 19, 2021 physical therapy questionnaire documenting Petitioner's referral to physical therapy for "shoulder after flu shot 2019.").

Respondent also notes that Petitioner reported locking, numbness and tingling in her left fourth and fifth fingers. Response at 6. However, it is likely that these symptoms

were unrelated to her December 2019 flu vaccination (and thus do not impact the entitlement determination). Although the records do not reveal any cause was proposed for Petitioner's February 13, 2020 complaint of finger locking, just twelve days later (on February 25, 2020) Petitioner attributed her finger numbness to "folding a lot of laundry." Ex. 8 at 50; Ex. 4 at 19. And on November 19, 2021, Petitioner attributed her finger symptoms to a shot she received "[a] few months ago," and hence another potentially-distinguishable event. Ex. 10 at 61. I have previously recognized that a petitioner may be able to differentiate the evidence supporting a Table SIRVA from "simultaneous areas of pain due to unrelated conditions*.*" *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2021 WL 4772097, at *8 and n. 16 (Fed. Cl. Spec. Mstr. Sept. 9, 2021).

Accordingly, preponderant evidence establishes that Petitioner's pain was sufficiently "limited" to her left shoulder for a favorable ruling on this SIRVA element, despite evidence of extraneous complaints (that in turn will not be taken into account in damages).

## V.   Other Requirements and Entitlement

### 1. Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent has not contested that Petitioner has met the first requirement under the QAI for a Table SIRVA. Additionally, I do not find any evidence that Petitioner suffered a pre-vaccination history of problems that would explain her post-vaccination shoulder symptoms. Accordingly, I find that Petitioner has met this first criterion to establish a Table SIRVA.

### 2. Onset

A petitioner alleging a SIRVA claim must also show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

Respondent does not dispute Petitioner has met this requirement. Additionally, I find that the evidence collectively establishes that Petitioner's shoulder pain began within 48 hours of receiving the December 12, 2019 flu vaccine. There is no counterevidence undercutting Petitioner's contention that her pain began close-in-time to vaccination. *See,*

*e.g.*, Ex. 3 at 12 (January 3, 2020 orthopedic note documenting Petitioner's report of left shoulder pain "present for 22 days on 12/12/2019, sirva a shot administered too high up."). Accordingly, I find that Petitioner has met this criterion to establish a Table SIRVA.

### 3. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent has not contested that Petitioner meets this criterion, and there is no evidence in the record to the contrary. Thus, the record contains preponderant evidence establishing that there is no other condition or abnormality which would explain the symptoms of Petitioner's left shoulder injury.

### A. Other Requirements for Entitlement

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), i.e., receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed.

Thus, based upon all of the above, Petitioner has established that she suffered a Table SIRVA, satisfying all other requirements for compensation.

## VI. Damages

### A. The Parties' Arguments

Petitioner requests $95,000.00 reflecting the totality of her SIRVA pain and suffering, and asks for no other category of damages in this case. Motion at 1. She argues that her course of treatment (which included around eight orthopedic appointments, one MRI, one cortisone injection and ten sessions of physical therapy) warrants an award at that level. Motion at 20-31; Reply at 10. Petitioner also posits that she endured severe pain and suffering, and that her symptoms have continued to interfere with her ability to perform activities of daily living – including sleeping, dressing, and tending to her children. Motion at 30; Reply at 10-11. In support of the amount requested, Petitioner compares the circumstances in her case to those in four other published Program decisions that resulted in pain and suffering awards of $85,000.00 or more: *Young*, *Gentile, Dhanoa, and Weber*.[6]

---

[6] *Young v. Sec'y of Health & Human Servs.*, No. 15-1241V, 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019) (awarding $100,000.00 for past pain and suffering); *Gentile v. Sec'y of Health & Human Servs.*, No.

10

Respondent, by contrast, proposes an award of no more than $57,500.00. Response at 2. He argues that "[P]etitioner's SIRVA was mild and limited. While [she] (1) understood her injury, (2) her injury clearly was not severe, and (3) she was subjected to the injury for less than one year." Response at 19. Respondent compared Petitioner's circumstances to those of the claimants from five other published Program decisions that resulted in pain and suffering awards of $60,000.00 or less: *Ramos, Roth, Rayborn, Norton, and Clendaniel*.[7]

### B. Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y Health & Human Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. [8]

---

16-0980V, 2020 WL 3618909 (Fed. Cl. Spec. Mstr. June 5, 2020)(awarding $85,000.00 for actual pain and suffering); *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 for actual pain and suffering.); *Weber v. Sec'y of Health & Human Servs.*, No. 17-0399V, 2019 WL 2521540 (Fed. Cl. Spec. Mstr. Apr. 9, 2019) (awarding $85,000.00 for past pain and suffering).

[7] *Ramos v. Sec'y of Health & Human Servs.*, No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) (awarding $40,000.00 for past pain and suffering); *Roth v. Sec'y of Health & Human Servs.*, No. 19-0944V, 2021 WL 4469920 (Fed. Cl. Spec. Mstr. Aug. 31, 2021)(awarding $58,000.00 for actual pain and suffering); *Rayborn v. Sec'y of Health & Human Servs.*, No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for actual pain and suffering.); *Norton v. Sec'y of Health & Human Servs.*, No. 19-1432V, 2021 WL 4805231 (Fed. Cl. Spec. Mstr. Sept. 14, 2021) (awarding $55,000.00 for past pain and suffering); *Clendaniel v. Sec'y of Health & Human Servs.*, No. 20-0213V, 2021 WL 4258775 (Fed. Cl. Spec. Mstr. Aug. 18, 2021)(awarding $60,000 for actual pain and suffering).

[8] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the same record relied upon to determine entitlement, including the medical record and affidavit, written briefs, and Petitioner's argument at the April 21st Motions Day hearing (since as noted above Respondent simply rested on his brief). I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases.[9]

The case record overall establishes that Petitioner experienced a moderate shoulder injury which was serious enough for her to promptly seek medical care (and at which time she categorized her pain as severe), but subsequently involved relatively conservative treatment for almost six months. Between January 3, 2020 and June 15, 2020, Petitioner participated in five physical therapy sessions, attended five orthopedic appointments, and underwent one x-ray and one MRI. Ex. 3 at 12-14; Ex. 4 at 11-13, 19, 21, 30, 48, 69-70; Ex. 9 at 26, 42-44, 49-52, 59-62.

By February 11, 2020 (approximately two months post vaccination), Petitioner's left shoulder symptoms began to improve. *See, e.g.,* Ex. 9 at 49. While she did experience a few setbacks, within three months of vaccination Petitioner was able to lift light objects and was successfully treating her symptoms with meloxicam. Ex. 4 at 11, 21. At an orthopedic appointment on June 15, 2020 (around six months post-vaccination), Petitioner reported further improvement, but noted that her left shoulder occasionally "popped." Ex. 9 at 26. Petitioner never underwent surgery.

It is not until November 19, 2021 – approximately seventeen months later – that Petitioner again sought treatment for her shoulder. While Petitioner points to the Pandemic to explain this gap, and although I have noted before that many treatment lulls occurring at this time were justifiable for that very reason, her decision to forego care for her shoulder during this period reasonably suggests that her injury was mild enough to tolerate. Indeed, Petitioner did present for a chest x-ray in September 2020, undermining somewhat the Pandemic explanation for the gap. *See* Ex. 7 at 7-9. Treatment gaps are "a relevant consideration in determining the degree of Petitioner's pain and suffering." *Dirksen v. Sec'y of Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201, at *9-10 (Fed. Cl. Spec. Mstr. Oct. 18, 2018).

---

[9] My summary of facts, as set forth in Section II herein, is fully incorporated and relied upon in my decision awarding damages.

Nevertheless, between November 19 and December 28, 2021, Petitioner subsequently participated in five additional sessions of physical therapy. Ex. 10 at 12-14, 24, 35-36, 46, 58-63. The treatment note documenting Petitioner's final physical therapy appointment (approximately two years post-vaccination) reflects a continuation of shoulder symptoms: Petitioner rated her pain as a three on a ten-point pain scale and the performance of everyday tasks (including the ability to lift her children) remained difficult or impossible. *Id.* at 13-14.

Seven months later - on May 21, 2021, Petitioner returned to her orthopedist with complaints of left shoulder pain. Ex. 11 at 32. And on June 14, 2022 (over two and a half years after the December 2019 flu vaccination), Petitioner received a cortisone injection in her left shoulder. Ex. 11 at 19.

While Respondent presented reasonable comparables in his brief, Petitioner has demonstrated entitlement to an award slightly exceeding Respondent's "number." Rather, and based upon the factors set forth herein, I find the circumstances in this case most similar to the experience of the petitioner in *Kuhn*, where an award of $67,500.00 was granted. *Kuhn v. Sec'y of Health & Human Servs.*, No. 18-0091V, 2020 WL 3750994 (Fed. Cl. Spec. Mstr. June 5, 2020). The *Kuhn* petitioner experienced severe initial pain which decreased substantially over the following months. Moreover, like Petitioner, he received only one cortisone injection. The cases are not wholly congruent: for instance, while Mr. Kuhn sought treatment barely a week after vaccination, Petitioner waited 22 days before presenting for care. But while Mr. Kuhn only completed five sessions of physical therapy, Petitioner completed ten. Thus the sum awarded in *Kuhn* overall seems to provide an apt and fair measure of what is appropriate herein.

Therefore, when balancing the length of Petitioner's moderate SIRVA injury with the reported severity of her pain and several treatment gaps, I find that $67,500.00 in total compensation for actual pain and suffering is reasonable in this case.

## Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $67,500.00, representing compensation for actual pain and suffering.**

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[10]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.